IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, *Plaintiff*, | : : : | CIVIL ACTION |
| v. | : : : | |
| TERRELLE BRICKHOUSE, *Defendant.* | : : | NO. 18-3139 |

## MEMORANDUM

PRATTER, J.                                             AUGUST 22nd, 2019

Plaintiff Malibu Media, LLC produces what is euphemistically referred to as "adult films."

Malibu alleges that Defendant Terrelle Brickhouse infringed on four of its copyrighted works "using the internet and BitTorrent protocol." Mem. in Support of Motion for Default Judgment at 1 (Doc. No. 23). Malibu filed an amended complaint in this action on January 9, 2019. Although Malibu served Mr. Brickhouse with the amended complaint on January 21, 2019, *see* Affidavit of Service (Doc. No. 20), Mr. Brickhouse failed to file an answer or otherwise respond thereto. Malibu now moves for an entry of default judgment, seeking statutory damages of $1,500 per infraction (for a total of $6,000), a permanent injunction, and attorneys' fees. As with all of the other filings in this case, Mr. Brickhouse failed to respond to the Motion for Entry of Default Judgment.

Although an entry of default judgment is appropriate in this case, Malibu has failed to explain why it is entitled to $1,500 per infraction, which is twice the statutory minimum of $750. Because the Court concludes that the statutory minimum of $750 is sufficient in this case, the Court awards a total of $3,000 in statutory damages, in addition to attorneys' fees and a permanent injunction against Mr. Brickhouse.

1

## BACKGROUND

Malibu alleges that the owner of IP address 69.242.42.0 illegally downloaded and distributed four of its copyrighted works via the BitTorrent file distribution network. Malibu identified Terrelle Brickhouse as the IP address owner through use of a subpoena on the internet service provider and an investigator, IPP International.[1] Malibu then amended its complaint to name Mr. Brickhouse as the defendant in this action. When Mr. Brickhouse failed to file a timely answer, Malibu requested entry of default. The Clerk of Court entered default on February 13, 2019, and Malibu thereafter filed this Motion for Entry of Default Judgment and a supporting memorandum.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs the procedure a plaintiff must follow to obtain a default judgment against a nonresponsive defendant. First, if the plaintiff shows the defendant's "fail[ure] to plead or otherwise defend, . . . the clerk must enter [the defendant's] default," Fed. R. Civ. P. 55(a), which is only valid if the defendant was properly served. *See Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1304 (3d Cir. 1995).

The plaintiff may then "apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). The Court's initial inquiry is "whether the unchallenged facts constitute a legitimate cause of action[.]" 10A Charles Alan Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 2688.1 (4th ed. 2019) (citing cases). As with the motion to dismiss stage, the Court accepts as true the well-pleaded factual allegations in the plaintiff's complaint, except those relating to damages, as though they were admitted or established by proof. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). The Court also accepts all reasonable inferences that can be drawn from the

---

[1] This Court has personal jurisdiction because, according to available information, Mr. Brickhouse resides within this District in Downington, Pennsylvania.

2

complaint. *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 270 (E.D. Pa. 2014). However, conclusory allegations and the parties' legal theories or "conclusions of law" are not entitled to the same presumption and are not deemed admitted. Wright & Miller, *supra*, § 2688.1.

If the Court determines that the plaintiff has stated a cause of action, it must then assess damages. Unlike liability, damages "cannot be awarded simply on the basis of the pleadings, but must instead be established at an evidentiary hearing held pursuant to [Rule] 55(b)(2)," unless damages are "liquidated or computable" or the plaintiff otherwise submits such proof without a hearing. *Comdyne I*, 908 F.2d at 1152. Rule 55(b)(2)'s language regarding hearings is permissive, however. If the court can determine the amount of damages to be awarded based on affidavits or other evidentiary materials, "[t]he Court is under no requirement to conduct an evidentiary hearing with testimony." *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 552 (E.D. Pa. 2009); *see Durant v. Husband*, 28 F.3d 12, 15 (3d Cir. 1994) ("If it is necessary 'to determine the amount of damages or to establish the truth of any averment by evidence,' the court *may* conduct a hearing.") (emphasis added) (quoting Fed. R. Civ. P. 55(b)(2)). The Court did not conduct a hearing in this case because one was not required or helpful to the Court's discharge of its obligations.

Default judgments are generally disfavored. *See Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982). Indeed, the default judgment context usually offers none of the adversarial argument upon which the American legal system is founded and which remains a pillar of courts' ability to make informed and well-reasoned decisions. Thus, under *Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000), the district court must examine three additional factors to determine whether it should grant a default judgment: "(1) prejudice to the plaintiff if default is denied, (2)

whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Id.* at 164.

## DISCUSSION

Malibu alleges that Mr. Brickhouse violated four of its copyrighted works. A claim for copyright infringement requires that the plaintiff prove: "(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *See Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002). Infringement is considered willful if, for example, the defendant fails to respond and default is entered or the defendant used BitTorrent protocol to gain access to a work for free that otherwise would have required payment. *See Malibu Media, LLC v. Flanagan*, No. 13-5890, 2014 WL 2957701, at \*2 n.4 (E.D. Pa. Jul. 1, 2014).

Mr. Brickhouse allegedly illegally downloaded Malibu's files through a BitTorrent file distribution network. Another court in this District has described the BitTorrent protocol as follows:

> [T]he BitTorrent software works automatically, joining together multiple internet subscribers (the "swarm") who are seeking to download the same movie at the same time. These individuals do not know each other. The software sends different "bits" of the same movie to different users and when the overall download is completed, each internet subscriber who has logged on to the software will have the complete movie on his or her own computer hard drive.

*Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 783–84 (E.D. Pa. 2013). According to Malibu, the "bits" have unique "file hashes" that allow an investigator to track them back to the computer where they originated. Am. Compl. ¶ 16 (Doc. No. 16). Here, Malibu states that its private investigator downloaded "bits" of four of Malibu's copyrighted movies from Mr. Brickhouse, demonstrating that someone using Mr. Brickhouse's IP address downloaded those

4

four movies and that those downloaded copies aided others in downloading illegal copies. Am. Compl. ¶¶ 17–25. "Based upon [Malibu's] experience filing over 1,000 cases[,] the geolocation technology used by Plaintiff has proven to be accurate to the District level in over 99% of the cases." Am. Compl. ¶ 6. Malibu has sufficiently alleged that Mr. Brickhouse willfully infringed its copyrights on the four works listed in Exhibit A to its Amended Complaint and the Motion for Default Judgment.

Malibu has met the standard for entry of a default judgment in this case. Malibu will be prejudiced if default is denied, because Mr. Brickhouse's failure to respond has caused, and will continue to cause, considerable delays. *Grove v. Rizzi 1857 S.P.A.*, No. 04-2053, 2013 WL 943283, at *2 (E.D. Pa. Mar. 12, 2013). Based on Mr. Brickhouse's failure to respond, the Court can also presume that Mr. Brickhouse lacks a meritorious defense, *Doe v. Simone*, No. 12-5825, 2013 WL 3772532, at *5 (D.N.J. July 17, 2013), "because '[i]t is not the court's responsibility to research the law and construct the parties' arguments for them.'" *Yakubets*, 3 F. Supp. 3d at 271–72 (quoting *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008)). And Mr. Brickhouse's failure to respond may qualify "as culpable conduct with respect to the entry of a default judgment—indeed, for the Court to conclude otherwise would be to reward the recalcitrant or the oppositional and uncooperative." *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 554 (E.D. Pa. 2009).

I. **Statutory Damages**

Under 17 U.S.C. § 504(c)(2), statutory damages may be awarded in an amount not less than $750 or more than $150,000 per infringed work. In this case, Malibu is seeking a total award of $6,000, or $1,500 per infringed work, which is twice the statutory minimum. Malibu alleges that Mr. Brickhouse "materially aided each of the other participants in the BitTorrent swarm of infringers." Mem. in Support at 11 (Doc. No. 23). Malibu states, without factual support, that

5

"actual damages are the lost sales of its content to those thousands of infringers" and "these lost sales far exceed $6,000." *Id.* This Court, however, is not convinced that anything above the statutory minimum is required in this case.

As it has in the past, Malibu points to cases, none of which are from this Circuit, as evidence that "[c]ourts routinely award statutory damages in an amount equal to $30,000 for intentional online copyright infringement per work on default judgment." Mem. in Support at 11 (Doc. No. 23); *see, e.g., Achte/Neunte Boll King Beteiligungs GMBH & Co KG v. Palmer*, No. 11-70, 2011 WL 4632597, at *1–2 (M.D. Fla. 2011) (granting a default judgment and awarding $30,000 statutory damages for online infringement); *Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 402–03 (S.D.N.Y. 2002) (same).

However, in "cases from various jurisdictions dealing with Malibu specifically, courts have awarded far less than $30,000 per infringement at the default judgment stage, and often less than the" $1,500 per work Malibu requests in this case. *Malibu Media, LLC v. Cui*, No.13-5897, 2014 WL 5410170, at *4 (E.D. Pa. Oct. 24, 2014) (awarding the statutory minimum of $750 per infringement); *see e.g., Malibu Media, LLC v. Funderburg*, No. 13-2614, 2015 WL 1887754, at *4 (N.D. Ill. 2015) (finding that an award of $750 per work, for a total of $9,000, was "sufficient to compensate Plaintiff and deter future violations"); *Malibu Media, LLC v. Caswell*, No. 14-837, 2015 WL 3822904, at *2 (S.D. Ohio June 19, 2015), *report and recommendation adopted sub nom. Malibu Media, LLC v. Doe*, No. 14-837, 2015 WL 5005800 (S.D. Ohio Aug. 21, 2015) ("Here, the Court concludes that an award of $750 per work will properly account for [the defendant's] gain, Malibu Media's loss, and the public's interest in deterring future violations."); *Malibu Media, LLC v. Bayko*, No. 18-964, 2019 WL 414917, at *1 (M.D. Pa. Feb. 1, 2019) ("Malibu requests double the minimum amount, or $1,500 per violation, for total statutory

damages of $10,500, and the court finding that the minimum statutory damages of $750 per each violation in the matter *sub judice* will provide sufficient compensation to Malibu and serve as an adequate deterrent to [the defendant] and others[.]"); *Malibu Media, LLC v. Powell*, No. 15-1211, 2016 WL 26068, at *1 (M.D. Pa. Jan. 4, 2016) (same); *Malibu Media, LLC v. Schelling*, No. 13-11436, 2014 WL 3400580, at *1 (E.D. Mich. Jul. 8, 2014) ("The plaintiff has not made a showing that justifies statutory damages in excess of the minimum amount.").

In this case, the Court will award damages of $750 per work, or $3,000 total, because Malibu has failed to provide the Court with any evidence supporting an award of damages greater than the statutory minimum. Malibu alleges that Mr. Brickhouse committed the violations "willfully," but provides very little factual detail regarding Mr. Brickhouse's intentions and actions when violating Malibu's copyright. Furthermore, Malibu provides no evidence as to how it calculated lost sales or that any, let alone all, of the infringers would have paid for the content had it not been available for free via BitTorrent. There is no allegation that Mr. Brickhouse profited from sharing the copyrighted works nor evidence of how much money he saved by illegally downloading, rather than purchasing, Malibu's works. Finally, "it is not necessarily the case that [Mr. Brickhouse] was the original user who made Malibu's works available to the public." *Caswell*, 2015 WL 3822904, at *2 (citing *Malibu Media, LLC v. Flanagan*, 2014 WL 2957701, at *4 ).

Although the Court understands that Malibu need not prove a specific dollar amount because Mr. Brickhouse's conduct justifies an award of statutory damages, the Court requires more support than what has been provided here to award damages in excess of the statutory minimum. The Court concludes that a total damages award of $3,000, plus attorneys' fees, is sufficient to deter future violations by Mr. Brickhouse or other individuals.

## II. Permanent Injunction

Malibu also seeks a permanent injunction enjoining Mr. Brickhouse "and all other persons who are in active concert or participation with" him from continuing to infringe Malibu's copyrighted works and ordering Mr. Brickhouse to delete the digital media files containing Malibu's works and the "infringing copies" of the works. Mem. in Support at 11–12 (Doc. No. 23). "In deciding whether to grant a permanent injunction, the district court must consider whether: (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest." *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001).

These factors weigh in favor of Malibu. However, as this Court has stated in the past, although "the Court agrees that an injunction against [Mr. Brickhouse] is appropriate, an injunction directed at 'all other persons who are in active concert or participation with [him]' implicates individuals who are not part of this lawsuit and over whom the Court may not even have jurisdiction." *Cui*, 2014 WL 5410170, at *4. As such, the Court will grant the injunction only as to Mr. Brickhouse.

## III. Attorney's Fees

Finally, Malibu seeks attorneys' fees and costs of $648.25, which include a statutory filing fee of $400, ISP fees of $80, and process service fees of $168.25. *See* Fiore Declaration (Doc. No. 23-2). Under 17 U.S.C. § 505, a district court may award costs and attorneys' fees to a prevailing party in a copyright infringement suit. After reviewing the declaration of Malibu's counsel setting forth the time spent on this matter, the Court finds that the fees and costs sought are reasonable.

## CONCLUSION

For the foregoing reasons, the Court will grant Malibu's Motion for Entry of Default Judgment in part and deny it in part. An appropriate order follows.

BY THE COURT:

*/s/ Gene E.K. Pratter*
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE